Good morning, Your Honors. John Michniewski on behalf of the Fusion Entities. Good morning, Your Honors. William Hardy on behalf of Selective Insurance Company. So we'll start out with 15 minutes per side, and the appellant can reserve time for rebuttal if you wish. And we're pretty liberal with our timing. All right, you ready to proceed? We're ready to proceed. Okay, please the court. Today the court is faced with a sort of a unique case. This is an underlying case that involved product liability of a manufacturer. Excuse me for interrupting, but how is this unique? Isn't this similar to the Netherlands case that was argued in the Seventh Circuit? Is it similar? It's similar, and it's unique to the state court. Okay. But what's unique about it, only the Netherlands case and the trial court in this case have faced the question of whether a manufacturer accused of being liable on a product liability theory, strict product liability theory, has stated a case that fits within a dram shop exclusion. So it's unique in the sense that this is the first time it's been argued in the First District. Well, and it's anywhere other than in the Netherlands. It's a round, I think it's a square peg trying to be fit into a round hole, and we'll see that when we look at the exclusion. Liquor liability exclusion requires two findings of causation in order to be applicable. First, there has to be a finding that fusion caused or contributed to someone's intoxication. That's part one. Part two is that the intoxication then has to lead, some of that person's intoxication has to lead to bodily injury for which, or by reason of which, as the exclusion says, fusion can be held liable. So taking the first point, and we submit that neither ground in these strict product liability cases is satisfied. Taking the first ground, although there are many causes of action and legitimacy, this is a duty to defend case, and I'd like to focus the court on the strict liability counts. Because the strict liability counts say fusion manufactured, formulated, and failed to warn about a product that it placed into the stream of commerce, and that product then caused adverse behavioral effects which resulted in somebody's bodily injury. And all of the underlying cases have that situation. But causing or contributing to intoxication is not an element of a strict product liability claim. It's just not an element. They don't say fusion made me drink this. They say fusion put it in the stream of commerce. I bought it, I drank it, and it did something bad to me. And a very important part of this, the legal backdrop of these cases, is that a plaintiff who has an injury because of somebody who was drunk or intoxicated cannot sue the manufacturer because the law uniformly, in all of the cases, like Charles v. Siegfried, 165, 1742. I mean, other than in a product's liability. Other than in a product's liability case where there's something other than the alcohol happening. Okay. The reason is that the law holds that it's not the manufacturer placing in the stream of commerce of an alcoholic product that is the proximate cause, or even the partial proximate cause, of somebody's getting intoxicated. But I would tell you about a product that is not the type of product that you would normally see in the stream of commerce. If you're buying a beer, you know you're buying a beer. If you're buying hard liquor, you know you're buying hard liquor. Here the manufacturer actually was putting out a product that was being represented in one fashion and actually was causing some other side effects. The adverse side effects is the part of the strict liability claim. No part of the strict liability claim is, you made me drink this. Okay. That's a very important point. It's not an element that fusion somehow tricked people into drinking this drink. The facts of the law... When I read your briefs and then I looked at the documents, I noticed that the liquor liability exclusion, the way it's worded, it says insurance did not apply to bodily injury for which an insured may be held liable for a reason of, and then the one is causing or contributing to the intoxication. But then if you look at Judge Valderrama's decision, it seems to me that he flipped it around because he said that this is bodily injury caused by intoxication. Is that the significant difference that you're pointing to, causing intoxication versus the injury being caused by intoxication? Am I getting that right? I'm suggesting there's two steps, and he's talking about the second step. Right. Step one is first we have to be accused of causing or contributing to the intoxication. Okay, well that leads me to my next question, and that is understanding that your position is that by putting this product into the stream of commerce, you're not causing someone to be intoxicated. When you look further in the policy and you look at the section that talks about who it applies to, it lists only if you manufacture. So if we assume that words in an insurance policy are not superfluous, what situation would arise where a manufacturer, because this provision applies to a manufacturer, if the manufacturer is not causing the intoxication, why is that in there? Why is that word manufacturer in there? It's actually very well known. We've cited some literature in the briefs. The section that says this policy applies only if you manufacture, sell, distribute alcoholic beverages, serve, furnish, et cetera, is to preserve coverage in dram shop type situations for social hosts. So if you're not in the business of manufacturing, selling, or distributing alcoholic beverages, you're a law firm, say, and you have an annual party where you're serving people. In many states, and there's actually not one of them, in many states you can be held liable under dram shop type liability for not being that last line of defense. You know, over-serving somebody who's already drunk or furnishing alcohol to minors, those sorts of things, and this is meant to preserve that. Now, manufacturers certainly have tasting rooms. I spent my childhood going to Busch Gardens in Williamsburg, Virginia, getting on the monorail and going to the tasting room where you get your two free beers. How old were you? Well, my father went, and I just kind of tagged along. I got a root beer. So when you go to the whiskey distillery's tasting room, that would fit into this? Exactly. Exactly, because they're furnishing alcohol. It could be for over-serving somebody who's drunk. They could be serving it to minors, and that's what this is for. It's also for when manufacturers sponsor an event. Sometimes you see, like, a town festival, and it's sponsored by, you know, AmeriCorps, and they'll have their products there and whatnot. So that's why that was intended. Is this the situation that arose in that case that the Seventh Circuit relied on? The colony case, exactly. The colony case. The colony case was a sponsored event where the alcohol manufacturers, it was Red Bull. Red Bull? Red Bull and their alcohol manufacturers, and they were, you know, serving people, and the specific allegations that they were over-serving people who were already drunk, obviously, and they were serving minors. It fit right into the exclusion. That's why it was really strange for the Seventh Circuit to somehow apply that to this situation. There's no discussion whatsoever of the different effect of Red Bull, you know, which is what we're arguing here, that it's a product liability case. That wasn't a product liability case. That was a straightforward dram shop case, and it fit right into the exclusion. But didn't the Seventh Circuit determine that the dram shop didn't apply in the Nolens case? The Seventh Circuit didn't say one thing or another about the dram shop. The Seventh Circuit just didn't. They didn't consider it. The argument was raised. They did not consider it, no. Well, you pointed out, if I'm correct, that with regard to that colony case, that the Seventh Circuit stated that there were no allegations that the manufacturer actually furnished or distributed, or not distributed, but furnished, served, the alcohol, and you state in your briefs that that's just incorrect. Yeah, because we read the case, and they clearly did not read it carefully. They also, the Seventh Circuit, 12th, right? It's in their position. The Seventh Circuit also suggested that fusion, in these underlying cases, was furnishing alcohol to people, which would fit it into the exclusion. But we don't furnish. We've cited cases showing, you know, furnish is a matter of law. Something's been litigated in dram shop cases. This is something that somebody on the front line who's serving does, not a manufacturer put in the stream of commerce. So point one is that in a strict liability claim, if you look, I think the Daniel Rocco case is a perfect example. Daniel Rocco was the drinker of full Rocco and the driver in both the Marston case and the Frank case. And what happened in that case was Rocco was driving, hit, Frank went from behind, spun her car around over the median, which got hit by the oncoming car driven by Marston. And Marston got badly hurt. Frank was killed. Those were the facts of that case. But the other facts in that case that are important is that Daniel Rocco and his girlfriend, he's underage, his girlfriend who was of age, at least to buy alcohol, went on a day trip from Gainesville to St. Augustine. That's a pretty long way. And they were drinking beer the whole way to St. Augustine. They stop at a convenience store, and Rocco says, point is, you know, I need to be more overt. Could you get me a full Rocco? So he gets one full Rocco. He drives still with his full Rocco. And I think the allegations in the Marston case are very, very telling about what the adverse effects, why there's a product liability allegation. And Pyrrha 56A, which you can find at RC5008 in the record, says its intended consumption, full Rocco, causes physiologic, behavioral, and metabolic changes unappreciated by its users. That's the nub. They don't know this is coming. And that limited the ability of users to recognize their own limitations and impair judgment. So it masked the effects, not intoxicated, but masked the effects of intoxication. And further, causes agitation, carelessness, and manic tendencies. That's straight from the stimulants part. Specifically, the combination of ingredients caused users to become impaired, aggressive, hostile, and disoriented, while at the same time feeling energized, strong, and in control of their faculties, when they were not. So there's two effects here. In all these complaints, what you see is you drink full Rocco, and the drinker has an unexpected effect. Something they weren't warned about, should have been warned about. That not only are they going to be awake, which they probably did expect, but that they're going to think that they're better than they are. They're going to feel energized, and I can drive, and I can do this, and get manic, and get hostile, and aggressive. These are things that are alleged that are because of the stimulants. And I think paragraph 60 of the Marston complaint makes that crystal clear, which is 5012 of the record. Due to the rapid impairment in the form of a misleading energy burst perceived by Daniel Rocca, due to his consuming the full Rocco beverage, they accelerated the vehicle to a high and excessive rate of speed, while defendant Fortes was a passenger, darted in and out of traffic, displayed aggressive behavior, and caused the vehicle to crash, resulting in serious injuries to the plaintiff. So here's somebody who's been drinking all day, and driving, beer, drinks the full Rocco, and now starts acting in a very different way from just being drunk. Starts getting aggressive, driving, I don't know what very rapid means, but it's going to be probably more than 60 miles an hour, darting in and out of traffic, and then realizes this lady, and you have the accident. So what do we have? We have strict liability claim. Let's go to part two now. Can full Rocco be held liable? So why are they accusing full Rocco of being liable in these cases? Is it because of intoxication? Well, for the exclusion to apply, it has to be. Right? But that's not what they're saying. They're saying, I mean, clearly, Rocca wanted to drink. He made the decision, just like the Supreme Court says. It was his causation to get intoxicated. He wanted to be a wide-awake drunk, but he wanted to be drunk. Right? But then something very strange happened to him. He got this burst of energy. He felt like he could drive super fast and be in full control of his faculties, and he wasn't because he was intoxicated. So the problem isn't that he was intoxicated. It's that he didn't perceive his intoxication, or he was acting manically and aggressively and hostily, which was the result of something else. Allegedly, the stimulants that are in the product. If the stimulants were the problem, then why did the FDA say that they had to be removed? I think the plaintiffs are absolutely alleging that the stimulants are the problem. And it was plaintiffs like this that inspired the FDA to take a closer look at this. The FDA originally approved this product. They approved Sparks that was by Miller Coors, I think. And they approved different products that even the biggest manufacturers were selling. And the FDA then went back, because they started to see some events like these, and said, you know, we really haven't proved that these things in combination are safe. So clearly what the plaintiffs are saying is it's the two together that cause a problem. So let's go back to the exclusion, part two. Is the intoxication the reason that fusion is being allegedly held liable? Can you point me to that provision? I know that we talked about under subsection C, parens one, is the part that says causing or contributing to the intoxication. Where is the part that talks about the intoxication causing the injury? It's the lead-in on C. So on page 2 of our brief, if you have an alleged injury, and insured may be held liable by reason of having caused or contributed to the intoxication of a person. So the intoxication has to cause the injury, and we have to be liable for that. That's part two. Part one is we have to cause or contribute to the intoxication. And you think neither apply? I think neither apply. Now, even if you were to say, okay, you've got two causes. You've got intoxication, and you've got something masking the intoxication, or something causing aggressive and manic behavior. Those are two different things coming together to cause it. That's where Illinois' sole approximate cause doctrine comes in. And I think it's clearly implicated here because you have, in the worst case, I guess sort of spinning the allegations in favor of the insurer, you have these two causes, not just the stimulants being the problem. So, okay, let's go with that. You have these two causes, intoxication excluded, stimulants not excluded. It is a separate act. All of the plaintiffs say, if only you'd left the stimulants out, this would be a perfectly safe product. They all say that. Because they have to. In a product stability case, you have to say what's wrong. What could they have done better? They could have warned that they could have left these things out. So are the stimulants in relation to the alcohol the same thing as the modifications to the bus in Northbrook? No. Well, tell us why. Here's why. Because that's where they're going to go. What? Well, in Northbrook, what you had was an exclusion for operation maintenance of a bus system, okay, of buses. So what the Supreme Court correctly perceived is that planning bus routes, you had two things going on. You had a count that the driver was negligent, okay, so you had poor training of the driver or whatever, and you had this idea of the bus routes were negligently planned so that the driver didn't expect that a train would be coming or whatever. And what the appellate court had said in that case was, you know, maybe that kind of sounds like two different things. We'll apply the Soapbox and Cars doctrine. Well, what the Supreme Court said was, no, no. The exclusion goes to operation and maintenance of this bus system. That includes planning. That includes training your drivers and stuff. It's just restating the one thing that's excluded. And that's a very important part of this doctrine, Your Honors. The cases like Mattis, which was a construction case, which we had two clearly different causes that came together to cause a wall to collapse. We had the SF&G case where you had, you know, an exclusion for operation and maintenance of a car, and you had a daycare center that was using the car, and the two different problems were negligent, you know, supervision of the children and driving the car. What happened was the kid got pushed out of the car while it was moving. Okay, well, it seems like it would apply. Certainly, the operation and maintenance part would apply. But the court said no. There was a separate negligent act. And when you've got one covered, one uncovered, working together caused the problem. There you go. But there are cases that put a limitation on that. And, in fact, in some of the out-of-state drip shop cases, or liquor liability cases, we've demonstrated that, where people, you know, try to get around the exclusion by saying, well, you know, yes, we were over-serving, but you didn't train your baristas very well. The court said, you're just saying the same thing. It's not something different. And that's what's going on in Northbrook. And, importantly, the Perez case, this first district appellate court, and subsequent cases have said Northbrook did not throw out the sole proximate cause doctrine. The Seventh Circuit might think that it did. And I argue the Seventh Circuit case. I'm a little sore about that. But I think, importantly, in our Illinois court system, which is really the authority on Illinois law, the courts have looked at Northbrook and said, no, it didn't throw out years and years and years of all these cases that adopt this doctrine. Why? Because it's a perfectly good doctrine. What's the back factor? We're talking about an exclusion in an insurance policy. The standard black-letter rules are you interpret an exclusion in an insurance policy narrowly. But what else is in this policy? The selective policy had a liability part, and it had a property part. In the property part, you have a series of exclusions, and some of those exclusions are prefaced with the language, these following exclusions exclude coverage, whether in combination with any other cause, in series or simultaneously, something like that. It's an anti-concurrent causation or anti-sole proximate cause language, because they know that's the rule. But they didn't apply that in this part of the policy, even though that's the rule. So, and I think actually this is an opportunity for the court to help clarify this, to say very clearly that the Seventh Circuit is wrong. The Seventh Circuit came out and said, if two causes are intertwined and one is excluded, it infects the whole thing, and so the exclusion applies. That's taking that exception for, like in Northbrook, where the court is knowing you're just saying the same thing, saying that the cause has to be wholly independent, the unexcluded cause, and then exactly reversing the doctrine to make it the exact opposite. Does that make any sense in the context of an exclusion in an insurance policy? Let me ask you this. In Northbrook and in Perez, we're looking at the two different separate independent actions, right? But shouldn't the complaints themselves allege wholly independent events from taking place to cause the injury? Because here we're looking at the product, right? The fact that the product physically has both the alcohol and the stimulants doesn't mean that putting into the stream of commerce, you have to put in a whiskey and red bull and it has to somehow come together, and only people who add red bull are liable. That's not what's going on here. And I don't think these other cases really do that and say that it has to be a separate count, for example. What you're looking at is causation. Are there multiple causes? And, in fact, to your point about separate counts, there's only one count that matters. It's a duty to defend case. The product liability count doesn't say it's the intoxication. It says formulating, manufacturing, placing in the stream of commerce without warning about the adverse effects. Whatever. And they all point to the stimulants. Why do they have to point to the stimulants? Because of Charles v. Siegfried. They have to point to the stimulants. If they just said, you're making people drunk by putting this in the stream of commerce, they'd be out. They have to come up with a way to get around that. And when the FDA came down on all the companies, including Fusion, plaintiffs saw an opportunity. They said, look, hey, here's a defective product. Because there was an intentional decision. If you read some of the complaint allegations, they talk about an intentional decision to make this product have stimulants in it and then to market it so that people think it's a great thing because it keeps you awake and so forth. So it is only one count. And the count, this is my first point, the count is all focused on the stimulants, not the intoxication. The adverse effects are masking intoxication, not causing it, and creating strange behavior, weird behavior in the form of agitation, aggressiveness, and manic behavior. And one other case I think, I've been focusing on the Daniel Rochafak situation because of, you know, it's two of the cases. But I think the Aguirre case is really very clear about this point, Your Honor. And this is paragraph 42 in the Aguirre complaint. I'm sorry I don't have the record site, but I know we cite to it in our brief. Actually, I do have the record site. Record site, RC 341 through 342, paragraphs 41 and 42. In 42, it says, Had Maldine, this is the lady who mooned the Amtrak train, okay? Had Maldine Aguirre only consumed alcohol and not 4-Loco, she would not have mooned the Amtrak train which caused her death. However, due to 4-Loco's high caffeine content and the presence of the stimulants Guarana, Taurine, and Wormwood, she acted erratic, irresponsible, careless, and with a defiant disregard for danger of consequences. It's a duty-to-defend case. We have to take what the plaintiffs say is true. What are the plaintiffs saying? You see I'm smiling because it's going to be interesting how they're going to prove that point down the road. She would not have done that if not for the stimulant. When factoring her, as discovery proceeded, apparently she liked the moon train. She just got on the wrong track. That's the real facts of this case. But the alleged fact is that it's 4-Loco who made her do it. They couldn't be clearer about that. All right, what about the, I was just distinguished from the case where the journalist went to sleep and never woke up. Again, what they're saying near the alcohol poisoning case. That's a less clear case because they're saying he died of alcohol poisoning. But again, they're not saying that we caused him to drink. He'd been drinking hard liquor as well as 4-Loco. He made the decision to become intoxicated. The fact that we put the product in the stream of commerce didn't cause or contribute to him becoming intoxicated. But the problem was, allegedly, it's a defective product. It masked his level of drunkenness, self-perception of his level of drunkenness, causing him to drink more and have alcohol poisoning. So again, it's not we caused him to be intoxicated, but that the stimulants masked it. It did something different from causing the intoxication. So just in sum, there are two parts to this, two levels of causation. Causing it, choosing it to cause or contribute, it didn't. And the intoxication had to be the sole approximate cause of the injuries. And in all these cases, it's clear that's not what the plaintiffs are saying. So I think there's a duty to defend here. And there's no question that the policy itself covers bodily injury caused by an occurrence. There's no question it's only the exclusion that's at issue, Your Honors. Thank you. Thank you, Your Honor. Thank you. I'm going to please the Court, William Hardy, on behalf of Select Insurance Company. I'd like to start by addressing this Charles v. Secret case that they cite and these other cases. What they're trying to do is, as opposed to looking at the underlying allegations of the complaints, which do allege that 4Local's product caused or contributed to the intoxication, each and every one of those complaints alleges that. What they do is they cite cases that have nothing to do with claims, insurance coverage claims, like Siegfried, which is a social host case. It simply says that there's no social host liability in Illinois. And there's language in there, that's true, that says, look, the approximate cause of someone becoming intoxicated is someone drinking it. Manufacturers are sued all the time in this country. In fact, they go on to cite in a footnote case after case after case where manufacturers are sued. The Brown case is a 2014 case where a manufacturer was sued for a billion dollars because of allegations that they violated statutes, deceptive advertising, breach of warranty, all these other things. Not a single one of those cases are insurance coverage cases. They have nothing to do with this case. In each and every one of these underlying cases, it is alleged that because of the unreasonably dangerous propensities of this product, they became intoxicated in whole or in part. Frank Adkins, the case in Marston that Fusion's counsel just talked about. Here's the allocation. As a direct and proximate result of 4-Loco being an unreasonably dangerous and defective product, Daniel Rocco became so intoxicated he caused the wrongful death of Donald Frank. Same allegation in Marston. 4-Loco caused him to become, quote, so intoxicated he caused the injuries to plaintiff Marston. Matthew's case. It is alleged as a direct and proximate result of the defective and dangerous design, manufacture, and formulation of 4-Loco, quote, deceived him, drank too much alcohol, and died. The Acquire case. If they keep focusing on this one allegation that but for the, if he drank only alcohol, it wouldn't have happened. The allegation, there's an allegation in the Proxy case, but for 4-Loco's defective and unreasonably dangerous condition and propensities, as well as its related inadequate warnings, Marley and Acquire would not have achieved the level of intoxication, disorientation, and agitation experienced on February 26, 2010. Each and every one of these cases are all about intoxication. Let me ask you a question. Sure. What did the selective think that it was ensuring? I mean, we have a product here that was, what, 23 ounces? Turns out that 12% of what's in the ingredient, or the 4-Loco, is alcohol, and I think in the complexity of the legislation, it's the equivalent of four to five beers, right? Sure. So what did selective think that they were ensuring, then? Well, you know, they addressed that point in other ones. In this case, as we point out in our statement of facts, initially when the application was filed, they identified this as, Fusion is manufacturing beverages that didn't include alcohol. Someone from selective later noticed that and made the agent, Chrissy, fill out a form that basically said, yeah, we do manufacture alcohol, a product with alcohol and beverages, and they gave them the option to purchase liquor liability coverage. They didn't purchase it. This is a CGL policy. There's all kinds of coverages under it. You know, the examples that were used in the Netherlands case, in the district court, where, you know, what if a can explodes? Or what if someone, what if there is a wholly independent claim? The claim is based solely on the stimulant. You know, a person has a heart attack because they have a reaction to Garine or Taurine or whatever, and there's no allegations whatsoever about intoxication. That's a different situation. But here, each and every one of these cases is inextricably linked to intoxication. Let me ask you this. In the underlying lawsuit, was there any allegations that this was a defective product? Yes. Yes. But each and every case alleges that it was defective in a way that resulted in the intoxication, either causing or contributing to it. And that's the key to it. Contributing to. If it even contributes to intoxication, it's excluded. And each and every one of these cases involves that. You know, they allege in each of these cases that one can of Four Loko, as you mentioned, Justice Reagan, 23.5 ounces. It includes the equivalent of five to six beers. What they're saying about stimulants is, look, I'm not going to pretend like stimulants are alleged in these complaints, but they're not wholly independent. The stimulants are alleged to have caused these individuals to become more intoxicated. And, sure, they have allegations that they became agitated. They accelerated at excessive speeds. Every intoxication case, a dram case, an automobile accident, that happens all the time. This is classic behavior that occurs when someone becomes intoxicated. And in these cases, you've got cases where they're drinking hard liquor, Four Loko, beer. In each and every one of these cases, these people were alleged to have become intoxicated. And that's the key. The key to this is you have to look at the underlying complaints. The fact that under Siegfried, if they want to say, even though it's not a manufacturer case, has nothing to do with this, or one of these other cases throughout the country where manufacturers are sued, if they want to argue that, hey, we're not liable because a manufacturer of beer or alcohol or grain alcohol, in one of these cases, is not liable for strict products liability, let them have at it. They can do that in the underlying case. What's at issue here is whether the underlying complaints, the allegations in the underlying complaints fall within the exclusion. And they don't argue that these are in any way ambiguous, that this exclusion isn't in any way ambiguous. Instead, they try to rewrite it by saying, oh, these dram shop cases, these are all, this is totally designed for dram shop. It's not designed for manufacturers. Well, it was sold to a manufacturer. And if you look at the exclusion, it could not be clear. This insurance does not apply to C, bodily injury or property damage for which any insured may be held liable by reason of causing or contributing to the intoxication of any person. Then it has three separate subparagraphs that say, this exclusion applies only if you, one, manufacture, sell or distribute alcoholic beverages. Then two and three deal with furnishing. Now, there is simply no way that you can read that exclusion and say that it doesn't apply to a manufacturer. And the fact that these other cases that they cite are dram shop cases doesn't mean that a manufacturer isn't covered. All it means is that the state of Illinois has not addressed this issue yet. But they don't argue that it's in any way ambiguous because it's not ambiguous. And if I heard Fusion's counsel correct, basically they were saying, yeah, these complaints do allege this. But the reason that there's no coverage or the reason that there's a duty to defend is because, well, they can't be held liable for it. Well, all those cases that they cite, and I can go through them if the court wishes, they cite these cases all over the country where manufacturers are sued. Well, that's the reason that they purchase liquor liability coverage. They had that option. And in the Netherlands case, the Netherlands case did, in fact, address all of these same issues. The Netherlands case, Seventh Circuit and the circuit court addressed the issue of dram shop cases and said we are not persuaded. Let me ask you a question. One issue that the Netherlands case didn't address, which we're being asked to consider, is the sole proximate cause. Right. Now, Fusion contends that the Seventh Circuit erred when it didn't apply the sole proximate cause. Sure. That is their argument. But the Seventh Circuit did not in any way overrule any case in Illinois. The Seventh Circuit cited the Northbrook case, the district court, and maybe the Seventh Circuit cited the Perez case. And those cases talk about how if you just recast, you can't plead yourself into these things, if you just recast the allegations and they're not wholly independent of an excluded clause, then there's still no coverage. Now, I heard a lot of arguments here about how this is some sort of a stimulant liability case. But there's no claim in any of these underlying cases that a stimulant liability, stimulants alone, would have caused this injury, any of these injuries. It's all specifically related to the intoxication. It's all intertwined. There's no claim here that because of the intoxicants only, this person had heart attack or this person suffered some ill effect or whatever. It's they became more intoxicated because of the stimulants. And, you know, these FDA reports that they cite in these underlying cases, they talk about how the addition of two cups of coffee, I mean, each one of these cans of Red Bull has two cups of coffee in it, and that causes people, that stimulant causes people to become more alert. So it's no different than somebody drinking two cups of coffee. And that's, in essence, what the Seventh Circuit said in the Netherlands case. Didn't the FDA also recommend that they remove the caffeine and the other stimulants that were in Ford Loco to make it a more safe product? That is in the underlying complaint. That's correct. But each and every underlying complaint seeks recovery because Ford Loco's product allegedly caused or contributed to the intoxication of these people. And, you know, what they want to do is say, well, the intoxication doesn't have anything to do with this. The intoxication, look, the reason that these people became erratic and started driving fast and so forth is the stimulants. Well, the allegations are that they became more intoxicated. And, you know, these are not, everybody knows what the effects of alcohol are. You overconsume alcohol, you suffer liver damage. You may have acute alcohol poisoning. One of these cases involves acute alcohol poisoning. The person was drinking Ford Loco, hard liquor, and he died as a direct result of becoming intoxicated. Now, if that's not excluded out of this, then this language is meaningless. And it can't be meaningless. This court has to apply this language as written. And you don't do that by looking at all kinds of irrelevant cases that have nothing to do with this exclusion. And so do I take your position correctly that you don't have a quarrel with the concept of the sole proximate cause theory? It's just that you think that these are so interrelated that it's just a recasting. Well, that's part of the answer. The second part of the answer, as we addressed in our brief, is the sole proximate cause cases that they're talking about are cases where the exclusion itself allows for another cause. In other words, if there's another cause, that exclusion would not apply. That doesn't exist here. If we caused or contributed to the intoxication, and that's the claim. That's where the word contributed comes in. Right, or contributed to. That's the key to it. And each and every one of these underlying cases concludes that. Now, you know, here's the bottom line. If Fusion wanted to buy this coverage, they could have. In the Netherlands case, the very end, this is the same plan, same counsel arguing the case. At the end of the decision, if Fusion wanted insurance coverage for incidents that occurred after someone imbibed its alcohol concoctions, the time to make that decision was when it purchased insurance. Fusion could have requested additional liquor liability and paid additional premiums for it. They did not. That's what happened here. Even the cases that they cite. You know, they cite, I've read so many cases in connection with this. They have all these footnotes with case after case, life insurance cases, disability cases, auto cases from all over the country, dram shop cases that don't have anything to do with insurance coverage. All different exclusions for the most part. Or if they don't have anything to do with insurance coverage, they're irrelevant. The few cases that they do cite, now it's true, they're dram cases and they're not cases that involve a manufacturer, but those cases all say, and the ones we cited, that this language is clear and unambiguous. And, for example, they cite this Midsand versus Western Heritage insurance company case, a dram case in their opening brief. I read that again last night. It involved an auto cause and it was a dram case. There's a quote right in there from Couch on Insurance. Standard commercial general liability policies generally exclude bodily injury or property damages arising from the insurer's manufacture, distribution, or sale of alcoholic beverages. Manufacture, distribution, or sale. By specifically excluding coverage for this risk generally, those who want such coverage must specifically request it and pay corresponding additional premiums, thereby allowing the insurer to assess the specific risks based on the nature and location of the business as well as the general character and history of the insurer. Well, that's what happened here. And, you know, we point this. We laid out all the facts in some detail in the original Third Amendment complaint. The reason we did that is that's the complaint that we moved to dismiss. But they're not disputing those facts. I think that's the reason that the court put this in the Netherlands case. Didn't all of the underlying complaints allege that the injuries that were caused were not wholly independent from the intoxication that was caused or contributed to the consumption of Fort Loco? I don't think any of the underlying cases talk about anything being wholly independent. What they say is that in each of these cases, those quotes that I read to you, the basic allegation is our product caused or contributed to this intoxication. And the stimulants that were added affected that, masked the effect of intoxication so they could actually drink more and become more intoxicated. Nothing wholly independent there. The only thing that's wholly, the only thing that is, well, let me put it to you this way. You can't take intoxication out of this. There's no liability without the intoxication. There's, under any theory, I mean, we have to take the allegations of the complaint. It's not whether or not a manufacturer is liable or not. They get sued all the time. But there's no wholly independent cause here or claim here for an action based solely on the stimulants. Those claims are all inextricably intertwined. And, you know, they could have purchased this coverage. They didn't. They had it under the Safeco policy for four years. Then they decided not to buy it. And that's what happened in the Fusion case. They want this coverage. They should purchase it. So the rule of law that you're saying should be here is whenever the underlying lawsuit claims a violation of the Dram Shop Act or intoxication, the exclusion occurs. Well, the underlying case doesn't. These cases don't allege Dram Shop. My position is that Dram Shop cases, those are. . . I said Dram Shop or intoxication. Well, I'm suggesting to you that in a manufacturer case like this where a CGL policy is issued to a manufacturer with a clear and unambiguous liquor liability exclusion like this, if it is alleged that the injuries were caused or contributed to by the product, if the product caused or contributed to the intoxication which led to the injuries, it's excluded, period. Well, isn't that what I just said? Yes, I think it is. Maybe I didn't. Maybe I wasn't listening quite right. But the Northbrook case, I'd like to address that briefly because the court asked about it. Again, we don't have a situation where there is a wholly independent claim here. We pointed out the Perez case in our brief. And in the Perez case, the court did say, look, we don't view the sole proximate cause rule as not being in existence anymore under Northbrook. But those cases all involved exclusions arising out of the use of an automobile accident where the allegations in the underlying complaint dealt with something wholly independent and separate about that. You know, I think the Perez case, if it's not that one, it's another one, the Perez case involved someone who was a daycare worker who put like eight or nine kids in a car. There's no supervision whatsoever. And the car is overloaded. And the kid opens the door and falls out of the car. And the court said, look, that's wholly independent of the operation of the car. This happened because they loaded all these kids in there. And under those specific facts, they said the exclusion doesn't apply. But that's not the exclusion we have here. The sole proximate cause rule, if it does exist in the context of these arising out of cases, it has nothing to do with the situation at issue in this case, period. All right, counsel, you want to wrap up? Sure. The language of the exclusion is clear and unambiguous. The trial judge properly compared the underlying complaints to the exclusion. There's no coverage. There's no duty to defend, period. It doesn't matter what these non-insurance coverage cases say. If anything, they establish why they should have purchased this coverage, and they decided not to. Thank you. Thank you, counsel. Thank you. So we would ask that you follow. Thank you. Rebuttal? Briefly? Very briefly. Point one, if Fusion had bought liquid liability coverage, we still wouldn't have coverage. All the liquid liability coverage is the exact opposite of this exclusion. So if the exclusion doesn't apply, the liquid liability coverage doesn't apply. That is a complete non sequitur. Yes, we sued the broker, and we settled with the broker. Our consistent position has been that this exclusion does not apply. What I heard counsel saying over and over was an attempt to take the two parts of this exclusion and make them one. Part one is, did Fusion cause or contribute to intoxication? We've answered that no. Part two is, did the intoxication solely cause the injury? He's trying to put those together and say, did the intoxication contribute to the injury? That's not what the exclusion says. And that's why the Sole Approximate Cause Doctrine applies absolutely to this, and that's why we cited opinion after opinion of insurance coverage cases around the country that applied the Sole Approximate Cause Doctrine to this exact exclusion. It hasn't been done here in Illinois, but it's been done over and over and over. Almost every court we've looked at has applied the Sole Approximate Cause Doctrine. We have these cases where somebody has been over-served, and then somebody comes in and there's no security, and they get into a fight, or they give the person their keys after they know they've been over-served, and so there's something not excluded besides the classic fair and sharp liability. And in those cases, the courts apply the Sole Approximate Cause Doctrine just like this court should. The selective insurance just told us that actually what you say in your complaint is that these additives that you're focusing on simply made these persons more intoxicated. So then where's the line between intoxication and more intoxication? I think you should really focus on that, because the argument is that the additives, and by the way, I don't think anybody here knows what Guarana, Taurine, and Wormwood do. We might think we know what Caffeine does. But what the plaintiffs are saying is that the combination of these various things causes aggressive manic behavior, and it's that part of it. They work on different parts of the nervous system. So one, the argument I think he's making is that because it masks, it makes you alert, masks the tiredness that you ordinarily would get from being intoxicated, you're able to drink more and therefore become more intoxicated. What about the fact that in the complaint it's alleged that four local is actually the equivalent of four or five beers? That's true. I mean, it's like a bottle of wine. It's a 23-ounce, 23-and-a-half-ounce can. Is the size of a bottle of wine contributing to intoxication? This is the point that, no, it doesn't. The person, the Roquefacts are perfect for this. He's been drinking beer all day. He decided to drink alcohol. He decided to drink an alcoholic energy drink, not an energy drink, not a Red Bull, not something different, but an alcoholic energy drink. He decided to get more drunk. And is this clearly labeled on a can or bottle or whatever it's contained in? Yeah. I mean, again, for Roquefacts, by the way, labels, just a little point I'm frosted about, it says come drink this and drive. This is a point for the underlying cases. It's like when people drink it and drive and there's no warning. Whatever. But you have to buy this with an ID card that says you're 21 years old. That's why Roque had, some days, his over-21-year-old girlfriend buy it for him. In every case, you have to be 21. The allegations are very clear that what he wanted was an alcoholic energy drink. You were about to say, you were saying it was not, in answer to my question, it's not just more intoxication, it's masking and what else? It's masking and it's these separate things about manic behavior, this feeling of empowerment, the burst of energy that's described in the Marston complaint. These are things that don't happen because of alcohol. And, you know, we may not believe them. We may look at that and go, really? But that's what these plaintiffs are saying. They're saying it's defective because it did this to me. Rosaberry is saying that she wouldn't have done this just on alcohol. When she did drink this full loco, she became aggressive. She became careless. She went and did something kind of nutty and learned to train. Again, whether we believe it or not, that's what they're saying. They're saying there's something very different. The big point I want to make about, and sort of leave you with, is this is an opportunity to put to rest once and for all this idea of wholly independent. Okay? The cases that Perez reaffirms and that later on the First District in United Services' Otto v. Dare reaffirms, cases like Mattis, the 1983 case of the First District, you had two causes. You had an improper design of the wall, and you had the settling of Phil for the wall that came together, neither of which independently could have caused the injury or the damage to that wall. That is very clear in the opinion. Two different things that only in combination caused that wall, one excluded, one not excluded. So approximately caused doctrine applies. The USF&G case, which is the case I think counsel is referring to, from 1987, is the case with the daycare. You had a car. It was moving. The child was pushed out the door. He was injured, not because the car wasn't moving or they weren't in a car, he could have been injured wholly independently by bad supervision, or maybe hypothetically. But in that case, those two causes came together. The Lewis March case from the Fifth District, there you had a construction site, and you had bad signage, and you also had a negligent driver. And the court said it's the two of those things that came together. District courts have recognized that the Seventh Circuit has gone a different way. We've cited that case. We've cited the William F. Brown, Cincinnati Insurance v. William F. Brown, no-calling case. That's 988 F. Second, 895. The court said, and actually cited to an unreported, a Rule 23 opinion as well, that the First District has clearly reaffirmed USF&G and Mattis and all those cases. And Perez has done it after Northbrook. And the other case I just cited has done it after Northbrook in 2005, the DARE case. Those cases say when you have two causes that independently wouldn't have done it, but that come together to cause the problem, one excluded, one not excluded, you apply the sole proximate cause doctrine. Why? It's an exclusion. It has to be read narrowly. And only by conflating the two parts of this exclusion and trying to say that if intoxication contributes, which it doesn't say, can you try to get around that. This exclusion says, one, cause or contribute, two, held liable by reason of intoxication, causing bodily injury. So it's one thing, intoxication, not partial intoxication or partly caused by intoxication. And that's an analytical point that's really important. I'll leave you with that. It seemed to me that wholly independent language kind of creeped into the jurisprudence in kind of a backwards way. Because the way I noticed that the Supreme Court in Northbrook took the language from the appellate court and said it's not that. I mean, they said, and they put it in quotes and then they cited to the appellate court opinion and they said this is not, quote, wholly independent of any negligent operation of the bus. But, you know, is that the Supreme Court saying this is the standard? Because it seems like that wholly independent language kind of came in the back door. Absolutely. I've actually given a presentation on this trying to show how the law has evolved here. And where the Seventh Circuit took a wrong turn in applying that and Northbrook gave them the ammunition to do it, is there is this clear exception where if you're just restating the same cause, you're trying to point to something that's really the same thing and you don't have something that's different, then that's an exception to the sole proximate cause rule. By recasting that as requiring a wholly independent cause that in some sense can, even though in this case it came together with another cause, but that in a hypothetical world it could have caused it by itself, as counsel was arguing that the stimulants all by themselves could have caused these problems. If that's the standard, then you have taken the exception and swallowed the rule. And that's where Perez comes out and says very clearly, no, that's not what the court did. The court was just criticizing the appellate court's application, not changing the rule and throwing out the rule altogether. Who was the trial court, Perez? Anybody look? That guy right there. Anything else, counsel? No, thank you, Your Honor. All right, thank you very much. The court wishes to thank all the parties for their excellent briefing, their excellent presentations. It's a very interesting case and we'll take it under advisement. Thank you very much. The court is adjourned.